UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| TRACY GARRETT, | CIVIL ACTION NO. 5:20-64-KKC |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| LT. ERIC KNIPPER, et al., | |
| **Defendants.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on motions for summary judgment by Defendant Eric Knipper[1] (DE 104) and Defendants Amanda Smith and Southern Health Partners, Inc. (collectively the "SHP Defendants") (DE 114). The motions having been fully briefed, the matter is now ripe for the Court's review.

**I. Background**

This case revolves around an incident on October 2, 2019 involving Plaintiff Tracy Garrett, an inmate at the Bourbon County Regional Detention Center ("BCRDC"), and Defendant Eric Knipper, a correctional officer at BCRDC.

A video of the incident shows Garrett and Knipper speaking confrontationally in a hallway at BCRDC. (DE 104-10.) With three other correctional officers present and two other unrestrained inmates present and walking away from the correctional officers—towards the camera—Knipper points down the hallway in the direction the other two inmates are walking. (*Id.* at 02:17–19.) The video lacks audio, but Knipper appears to be directing Garrett to head in the direction of the other two inmates. When Garrett does not move,

---

[1] Defendant Knipper has been referred to as both "Nipper" and "Knipper" in various filings. Based on numerous documents in the record, it appears that "Knipper" is correct.

Knipper steps closer to Garrett. (*Id.* at 02:19–20.) Knipper points at Garrett and then points down the hall again with his right hand. (*Id.* at 02:21–22.) It is unclear in the video whether Garrett then swats Knipper's left hand or whether Knipper grabs Garrett's hand or both. (*Id.* at 02:22–23.) Knipper contends that "Garrett raised his right hand, and Deputy Knipper moved forward and tried to grab it, but Garrett turned his body to face down the hallway and pulled his arm away from Deputy Knipper." (DE 104-1 at 3.) Garrett claims that he "did not extend his arm towards Knipper and he begins to turn around and his back is almost to Knipper." (DE 111 at 3.) Knipper then grabs Garrett and wrestles him to the ground (DE 104-10 at 02:24–29), at which point Mark Sutton and Nicholas Rathbone help Knipper put handcuffs on Garrett. (*Id.* at 02:30–59.)

Knipper and Garrett agree that after the physical altercation, Garrett informed Knipper that his shoulder hurt. (DEs 104-11 at 7, 104-12 at 10.) Knipper believes that he told Nurse Amanda Smith about the injury the following morning, October 3. (DE 104-11 at 9.) Amanda Smith is unsure of whether Knipper told her about the injury on October 3 or October 4, but Garrett's shoulder was x-rayed on October 4, approximately 36 hours after the incident. (DE 104-21.) The radiology report indicates that Garrett had a "minimally displaced acute or subacute fracture of the distal end of the clavicle." (*Id.*)

Garrett's engagement of BCRDC's process for filing a grievance—to the extent that it occurred—is somewhat convoluted. Garrett says that he discussed the incident with Sutton, the next shift commander ("Officer Gates"), and a couple of officers that no longer work at BCRDC. (DE 104-12 at 16–18.) He further states that he submitted a paper grievance and received a response, at which point he "started the process of trying to contact lawyers" and filed a handwritten complaint with this Court. (*Id.* at 19.) The paper grievance appears to have been filed on February 26, 2020—almost five months after the incident—with a

response by BCRDC submitted on February 27, 2020.  (DE 104-18.)  Garrett does not dispute

that he did not appeal the response to the grievance.  (DE 111 at 10.)

Garrett filed his pro se complaint with this Court on February 12, 2020.  (DE 1.)

Garrett testified in his deposition that he filed the complaint *after* receiving the response to

his grievance (DE 104-12 at 19), but according to the evidence in the record, he filed his

complaint with this Court two weeks *before* he filed his grievance.  (DEs 1, 104-18.)  The

operative Second Amended Complaint, submitted after Garrett obtained counsel, appears to

allege the following: (1) Eighth Amendment violations by Knipper, Smith, and SHP; (2)

violations of Section 17 of the Kentucky Constitution by Knipper, Smith, and SHP; (3)

negligence per se for violations of 501 KAR 3:140 Section 8 and 501 KAR 3:3090 Section 1 (13

and (21) by Knipper and Smith, for which SHP is also vicariously liable; (4) negligence and

gross negligence by Knipper, Smith, and SHP; and (5) "vicarious liability" by SHP for the

actions of Smith.

Knipper and the SHP Defendants now move for summary judgment on all issues.

(DEs 104, 114.)  Garrett has responded to both motions (DEs 111, 117), Defendants have both

replied (DEs 113, 119), and the matter is now ripe for the Court's review.

## II. Summary Judgment Standard

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant

shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." A party seeking summary judgment bears the initial burden

of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative

showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576

F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention

3

"to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational fact finder could not find for the non-moving party based on the record as a whole, there is no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

Both Knipper and the SHP Defendants first argue for summary judgment because Garrett failed to exhaust his administrative remedies as required by federal and state law.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his or her administrative remedies before bringing suit regarding prison conditions. 42 U.S.C. § 1997e. Kentucky has a similar requirement codified in KRS § 454.415. Both of these statutes apply to the claims brought by Garrett. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); *see also Harris v. Zirklebach*, No. 2019-CA-1293-MR, 2021 WL 298786 (Ky. Ct. App. Jan. 29, 2021) (applying KRS § 454.415 to a complaint that included Eighth Amendment and state tort claims). To exhaust his administrative remedies, an inmate must comply with the grievance procedures put forward by his correctional institution, *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017), and comply "with an agency's deadlines and other critical procedural rules . . . ." *Woodford v. Ngo*, 548 U.S. 81, 90

(2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The exhaustion requirement gives "prison officials a fair opportunity to address a prisoner's claims on the merits before federal litigation is commenced." *Mattox*, 851 F.3d at 592.

This exhaustion requirement is mandatory, and claims that have not been exhausted cannot be asserted before the court. *Jones*, 549 U.S. at 220. However, there are a few limited circumstances where the administrative remedies are rendered "unavailable" to an inmate. *Does 8–10 v. Snyder*, 945 F.3d 951, 954 (6th Cir. 2019) (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is considered "unavailable" when: (1) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) the administrative scheme is so opaque that it becomes, practically speaking, incapable of use; or (3) when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. *Ross*, 578 U.S. at 643. If a defendant carries its burden of showing that there was a generally available administrative remedy and that the inmate did not exhaust that remedy, the burden then shifts to the inmate to demonstrate a genuine dispute of material fact that the existing and generally available administrative remedy was effectively unavailable to him. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

It is undisputed that BCRDC's grievance policy was as follows:

- The inmate must first orally submit grievance to the Shift Commander to be addressed.
- If the inmate is not satisfied with the oral decision, the inmate can request a grievance form or use a plain sheet of paper. The inmate must return the grievance form to the same officer that issued the grievance form. The form must be filled out completely.
- The officer will forward the grievance form to the Operations Commander within twenty-four (24) hours of the decision.
- Operations Commander will do a face to face interview with inmate and document the findings in writing on the grievance form.

- If inmate is unsatisfied they may submit an appeal to the appeal board for a ruling. The appeal board meets one Thursday a month if needed. The Operation's Commander will schedule the date of appeal.
- If still unsatisfied the inmate may submit an appeal in writing to the Jail Administrator within 24 hours.
- If the inmate is still in disagreement they may submit to the court of jurisdiction.
- All responses to grievance should be done within ten days of being submitted.
- Grievance forms may be requested at any time except during head counts, meal times, medical call, med passes, and distribution of canteen and during any jail programs or services.
- All grievance issues must be on a jail grievance form or on a plain sheet of paper, dated and signed by inmate.
- Any grievances must be submitted within 15 (fifteen) days of incident.

(DE 104-32 at 3.)  It is also undisputed that Garrett filed his written grievance on February 26, 2020 (DE 104-18), almost five months after the incident and two weeks after filing this lawsuit. In Garrett's response to Knipper's motion, he argues that "Garrett was locked down for thirty (30) days and the administrative process was not available to him."  (DE 111 at 10.) It is unclear to the Court what "locked down" means and the restrictions of that condition, as Garrett also signed an affidavit stating that he was in "isolation" for three days after the incident (DE 112-2)—a statement that appears to contradict Garrett's deposition testimony, in which he stated that he was released from "segregation" on October 4. Garrett does not explain why—even if he was "locked down" for thirty days—he then waited almost four months to file a written grievance. He further does not explain why "the administrative process was not available to him" before he filed his grievance, but he *was* able to file a lawsuit in federal court before he filed his grievance. Garrett finally argues that BCRDC "did not comply with their own grievance procedures" because they ruled on the merits of Garrett's grievance even though it was untimely and because the Operations Commander did not do a face-to-face interview with Garrett.  (DE 111 at 9–10.)  The Court assumes that this is a way of saying that Defendants waived the argument that Garrett did not follow the proper administrative procedures. Even if, *arguendo*, a merits determination of Garrett's grievance

6

constituted waiver of a timeliness challenge or the lack of a face-to-face interview constituted waiver of some other argument, Garrett still failed to follow the remainder of the administrative process, which would have required two more appeals. Garrett argues that he "was under the impression that there were no more administrative remedies available to him[,]" that "[t]he process is very exhaustive for one with only a high school education and on lock down for thirty (30) days with a fractured collar bone[,]" and that BCRDC "mislead [sic] Garrett to believe there was nothing left to do." (DE 111 at 10.)  The Sixth Circuit has rejected such arguments, and Garrett provides no evidence or argument as to why the circumstances here demand the result Garrett seeks in spite of Sixth Circuit precedent. *See Brock v. Kenton Cnty., Ky.*, 93 F. App'x 792, 797–98 (6th Cir. 2004) (rejecting the argument that administrative remedies were not "available" because inmates were not aware of their existence, the grievance process had never been used, prison officials never gave the defendant any information about the grievance system, and the defendant did not have subjective knowledge of the grievance system); *see also Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (explaining that exhaustion is required under the PLRA even if the inmate subjectively believes the remedy is not available, the state cannot grant the particular relief requested, or the inmates believe the procedure to be ineffectual or futile).

Here, Defendants have carried their burden of showing that a grievance procedure was in place and that Garrett failed to exhaust his administrative remedies when: he filed this lawsuit prior to filing a written grievance; he filed his written grievance over four months after the deadline required by the grievance procedures; and he did not appeal the response to his written grievance as required by the grievance procedures. Garrett has not pointed to any genuine dispute of material fact on this issue. The relevant section of each of his responses begins with one paragraph copied verbatim from a section of the American Law Reports about a Second Circuit case and two paragraphs containing several verbatim copies

7

of Westlaw summaries of cases from other Circuits. (DEs 111 at 7–9, 117 at 9–11.) He goes

on to make the arguments addressed by the Court above without providing any evidence or

Sixth Circuit caselaw that would allow a jury to find that the administrative remedies process

was "unavailable" to Garrett.

Thus, Defendants' motions for summary judgment will be granted based on Garrett's

failure to exhaust his administrative remedies. Because "no unexhausted claim may be

considered," *Jones*, 549 U.S. at 220, the Court will not consider the merits of Garrett's claim.

### IV. Conclusion

Accordingly, for the reasons set forth herein, IT IS HEREBY ORDERED:

(1) The SHP Defendants' motion for leave to file excess pages (DE 118) is GRANTED;

(2) Defendant Knipper's motion for summary judgment (DE 104) is GRANTED;

(3) The SHP Defendants' motion for summary judgment (DE 114) is GRANTED; and

(4) The Clerk of the Court shall update the docket to SUBSTITUTE "Lt. Eric Knipper" for the Defendant currently identified as "Lt. Eric Nipper."

This 5th day of July, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY